FILED
**Nov 19, 2025**
**11:40 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Marcus Leavelle | Docket No. 2022-08-0109 |
| v. | State File No. 90156-2021 |
| RCT Memphis TN PC, et al. | |
| Appeal from the Court of Workers' Compensation Claims Shaterra R. Marion, Judge | Heard October 23, 2025 via Microsoft Teams |

---

### Affirmed and Certified as Final

---

In this case, the trial court issued both a compensation order and a subsequent order amending its compensation order in part. After the latter of those orders was issued, the employer filed a notice of appeal, asserting the trial court erred in accepting the opinion of one physician over that of another and in granting certain disability and medical benefits. The employee then filed a motion to dismiss the appeal, arguing the employer's notice of appeal was untimely as to the issues addressed in the court's original compensation order. Upon consideration of the record as a whole and arguments of counsel, we deny the employee's motion to dismiss the appeal, affirm the trial court's orders, and certify the amended compensation order as final.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Garett P. Franklyn, Knoxville, Tennessee, for the employer-appellant, RCT Memphis TN PC[1]

Andrew L. Wener, Memphis, Tennessee, for the employee-appellee, Marcus Leavelle

---

[1] Throughout the record, Employer is variously referenced as RCT Coca-Cola Bottling Co., RCT Memphis TN PC, and Coca-Cola Consolidated, Inc. For purposes of this opinion, we use the same designation that appears in the trial court's compensation order.

**Factual and Procedural Background**

Marcus Leavelle ("Employee") worked for RCT Memphis TN PC ("Employer"). On December 1, 2021, Employee reported injuring his left knee when he felt a "pop" as he hopped down from a trailer. He initially received authorized medical treatment at Concentra, where he was evaluated by John Goodfred, D.O.[2] In his December 1 report, Dr. Goodfred noted Employee's history of a prior knee surgery. Employee described a constant, aching pain and swelling in his left knee following the work accident. During his physical examination, Dr. Goodfred noted evidence of acute swelling and "well healed surgical scars." He also described diffuse tenderness and limited range of motion in the knee. Dr. Goodfred ordered x-rays, but his report does not reflect any specific findings from the x-rays. He diagnosed a left knee strain with "internal derangement," and he prescribed medications and ordered an MRI and physical therapy.

Employee attended physical therapy at Concentra beginning on December 6. In her first report, the therapist noted that Employee's x-rays were "negative for fracture or abnormalities." On that date, Employee complained of "aching, heav[iness], tightness[,] and throbbing" in his left knee, and he rated his pain as 8/10. He continued physical therapy several times a week for the next several weeks. He next saw Dr. Goodfred on December 8 for a recheck of his "left knee injury." Dr. Goodfred noted that Employee was showing "minimal improvement" from the three therapy appointments he had attended as of that date. Employee continued to report pain, swelling, and stiffness in his left knee, and Dr. Goodfred noted swelling, tenderness, and limited range of motion during his physical examination. He also stated that Employee "has significant difficulties with the physical requirements of his job." Dr. Goodfred discussed with Employee the need to progressively increase his physical activities even if such activities are not pain free.

Employee continued attending physical therapy until his MRI on December 21. The MRI showed evidence of "joint effusion" but was described as "otherwise normal."[3] There was no evidence of meniscal tears or other ligament injuries. On December 23, Employee attended another physical therapy appointment at Concentra. During that visit, Employee informed the therapist that his "daughter ran into [his] knee with [a] hoverboard and he is in worse pain/swelling today." Employee saw Dr. Goodfred later that day, but Dr. Goodfred did not mention the hoverboard incident in his report. He again found evidence of decreased range of motion in the left knee and noted that Employee was using crutches to ambulate. He diagnosed Employee with "[o]ther internal derangement of left knee."

On that same date, apparently in light of the MRI findings, Dr. Goodfred placed Employee at maximum medical improvement and opined that "it does not appear that the

---

[2] Employee testified that he did not recall receiving a panel of physicians from Employer but instead remembered being directed to Concentra by Employer or its insurer.

[3] In his deposition, Dr. Goodfred described joint effusion as "an increase in fluid within the articular space."

presenting complaints arose out of [his] job duties in the course of the patient performing those duties." Dr. Goodfred then stated, "Released from [c]are. [Employee] advised to see private orthopedic specialist."

Thereafter, Employee sought treatment on his own at the Campbell Clinic, where he saw Dr. James Harkess on January 6, 2022. In his report, Dr. Harkess described the work accident in which Employee recounted experiencing a "pop" and immediate swelling after getting out of a truck at work. During his physical examination, Dr. Harkess noted "significant joint effusion." X-rays of the left knee showed no fractures, but Dr. Harkess stated that he reviewed the MRI films and considered the possibility of a "loose body in the medial retinaculum." He diagnosed a possible patellar dislocation. Dr. Harkess concluded that, "[c]learly, he has a work-related injury and likely had patellar instability." He placed Employee in a knee immobilizer and recommended additional physical therapy. Dr. Harkess's report also reflects that "the patient was examined along with Dr. Bernholt today" and that Dr. Bernholt "was in agreement." Employee was instructed to follow up with Dr. Bernholt in three weeks.

Employee continued to treat at Campbell Clinic with Dr. Bernholt. During his January 27 visit, Employee advised Dr. Bernholt that he previously had surgery on his left knee in 1999 and again in 2003, but he denied having any "significant antecedent problems prior to this injury." Dr. Bernholt noted the MRI findings but stated that Employee "did have a large effusion," which Dr. Harkess had aspirated. Dr. Bernholt then concluded that Employee "did have a patellar subluxation or dislocation-type of event." He gave Employee a new brace and a prescription for an anti-inflammatory medication, placed him on sedentary restrictions, and encouraged him to continue with physical therapy.

By late March 2022, Employee continued to report significant pain and other symptoms. Although Dr. Bernholt commented that Employee was "making some progress" with physical therapy, he recommended proceeding with a cortisone injection, to which Employee agreed. Dr. Bernholt noted that Employee "is still quite limited," and he kept Employee's work restrictions the same. He then stated, "If he fails to improve with this conservative treatment, we may have to start discussing operative intervention."

In his June 2 report, Dr. Bernholt concluded that conservative treatment had failed to improve Employee's condition and that surgical intervention was warranted. On June 17, Dr. Bernholt performed a partial medial meniscectomy and patellar chondroplasty. After examining the interior of Employee's knee during surgery, Dr. Bernholt diagnosed a full-thickness chondral lesion of the lateral femoral condyle "with loose chondral flaps" and a "left medial meniscus tear" in the "mid body posterior horn junction."

Following surgery, Employee's symptoms began to abate, and his functionality improved. In July 2022, Dr. Bernholt commented that Employee's range of motion was improving and that his pain was decreasing. Dr. Bernholt encouraged him to increase

weight-bearing as tolerated. By September, Dr. Bernholt reported no effusion around the left knee, and by November, Employee reported that his knee had returned to normal. Dr. Bernholt assigned no physical restrictions at that time.

In preparation for trial, the parties deposed Dr. Goodfred once and Dr. Bernholt twice. During his deposition, Dr. Goodfred confirmed that his practice in Memphis consists of "90 to 95 percent" workers' compensation patients. He stated he is licensed to practice medicine in Tennessee but is not board-certified in any particular specialty. Significantly, Dr. Goodfred also testified that he is not familiar with the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides"). With respect to his care of Employee, Dr. Goodfred stated that he diagnosed a knee strain but that he "did not have an explanation for the mild effusion" seen on the MRI. Ultimately, Dr. Goodfred stated, "I did not believe that the MRI findings were consistent with his mechanism of injury." He then concluded that the condition of Employee's knee was not more than 50% related to the reported work accident. With respect to the hoverboard incident, Dr. Goodfred agreed it was reasonable to believe that incident "could exacerbate or aggravate or worsen" Employee's condition. However, during cross examination, Dr. Goodfred agreed that Employee complained of pain and swelling in his knee both before and after the hoverboard incident.

In contrast, during his second deposition, Dr. Bernholt reiterated that he found evidence of a "full-thickness chondral defect" in Employee's left knee during surgery, which he repaired. Dr. Bernholt commented that "the sensitivity of MRI for chondral lesions is not 100 percent" but that his diagnosis was based largely on what he found during surgery. Dr. Bernholt also confirmed his opinion that this condition was "greater than 50 percent related to the work injury." He also concluded, based on his review of the applicable edition of the AMA Guides, that Employee qualified for a permanent medical impairment rating of two percent.

The court conducted a compensation hearing on March 24, 2025, at which Employee was the only witness to testify in person. On direct examination, he described the work incident and his left knee symptoms that arose following that incident. He testified that he continued to suffer the same symptoms after Dr. Goodfred released him. He remained off work while treating with Dr. Bernholt until after his surgery. Ultimately, he returned to work making less money than he did while working for Employer.

The court issued a compensation hearing order on April 8, 2025. It concluded Employee had proven by a preponderance of the evidence that he sustained an injury arising primarily out of the work-related accident. The court also determined that Dr. Bernholt's opinions were entitled to greater weight than Dr. Goodfred's and offered the more probable explanation of causation. As a result, the court ordered Employer to pay permanent disability benefits based on Dr. Bernholt's two percent rating, plus increased benefits because, as of the date his initial benefit period expired, Employee had not returned

to work at an equal or greater rate of pay as before the work accident. In addition, the court ordered Employer to reimburse medical expenses Employee incurred as a result of his treatment with Dr. Bernholt, and it identified Dr. Bernholt as Employee's authorized treating physician moving forward. With respect to the unpaid medical expenses, the court stated, "[Employee's] attorney is entitled to a fee of 20% of this award." Finally, the court awarded an additional period of temporary disability benefits based on Dr. Bernholt's restrictions and surgical treatment.

On April 21, Employer filed a motion to amend the court's compensation order. In essence, Employer asked the court to clarify that, although Employee's attorney may be entitled to a fee equal to 20% of the unpaid medical expenses, that award is not a separate award to be paid directly by Employer but instead comes out of Employee's award of benefits. In addition, Employee filed a post-trial motion for discretionary costs. On July 16, the court issued an order granting in part Employer's motion to amend. The court agreed that the attorney's fee based on 20% of the unpaid medical expenses is "to be paid out of [Employee's] permanent and temporary disability award." Then, on August 1, the court issued an order granting in part Employee's motion for discretionary costs.

Employer filed a notice of appeal on August 6 and asserted that the court abused its discretion in accepting Dr. Bernholt's opinions over those of Dr. Goodfred and erred in "disregarding a subsequent and intervening event." On August 8, Employee filed a motion to dismiss Employer's appeal, asserting that Employer's notice of appeal was untimely with respect to any findings contained in the court's April 8 compensation order that were not subsequently addressed in its July 16 order addressing the attorney's fee issue.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

5

**Analysis**

This case presents three issues for review:

(1)     Under what circumstances are the issues presented for review on appeal limited by the timing of the filing of a notice of appeal?

(2)     Did the trial court err in accepting the opinions of Dr. Bernholt over those of Dr. Goodfred?

(3)     Did the trial court disregard evidence of an independent intervening event?

*Employee's Motion to Dismiss Appeal*

In his motion to dismiss Employer's appeal, Employee argues that when the trial court's compensation order was issued on April 8, 2025, Employer had thirty calendar days to file its notice of appeal pursuant to Tennessee Code Annotated section 50-6-217(a)(2)(B). Here, Employer did not file a notice of appeal within that thirty-calendar-day period but instead filed a motion on April 21 asking the court to amend its compensation order pursuant to Tennessee Rule of Civil Procedure 59.04. Employee then filed a response to Employer's motion to amend later that same day, to which Employer responded the following day.

Also, on April 25, Employee filed a post-trial motion for discretionary costs. Thereafter, due to Employee's counsel's need to take a 45-day medical leave, and upon agreement of the parties, a hearing was not set to address the post-trial motions until July 7, 2025. On July 16, the court issued an order granting in part Employer's motion to amend, and on August 1, the court issued an order granting in part Employee's motion for discretionary costs. Employer's notice of appeal was filed on August 6, within thirty calendar days of the date the court amended its compensation order.

Employee argues that by failing to file a notice of appeal within thirty days of the date the original compensation order was issued in April, Employer waived its right to appeal any issues addressed in that compensation order that were not subsequently addressed in one of the post-trial orders issued in July. Stated another way, Employee asserts that the issues on appeal are limited to those issues addressed in one of the court's orders filed within the thirty-day period preceding the filing of the notice of appeal. As discussed in more detail below, we disagree.

Tennessee Code Annotated section 50-6-239(c)(1) states that all hearings conducted in the Court of Workers' Compensation Claims shall be governed by the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure "unless an alternative procedural

6

or evidentiary rule has been adopted by the [A]dministrator" of the Bureau of Workers' Compensation. As noted above, the deadlines within which to file appeals to the Appeals Board are statutory. *See* Tenn. Code Ann. § 50-6-217(a)(2).

Tennessee Rule of Civil Procedure 52.02 states that in circumstances where a trial court has issued a judgment, any party may, "not later than thirty days after entry of judgment," file a motion asking the court to "amend its findings or make additional findings." Moreover, Rule 52.02 also states:

> When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment.

Tenn. R. Civ. P. 52.02. Furthermore, Tennessee Rule of Civil Procedure 59.01 specifies that a motion filed under Rule 52.02 "extend[s] the time for taking steps in the regular appellate process." We are aware of no rule adopted by the Administrator of the Bureau, and none has been cited to us, that conflicts with Tennessee Rules of Civil Procedure 52.02 or 59.01.[4]

We previously addressed a similar issue in *Garassino v. Western Express, Inc.*, No. 2014-07-0013, 2016 TN Wrk. Comp. App. Bd. LEXIS 82 (Tenn. Work. Comp. App. Bd. Nov. 7, 2016). In that case, the trial court issued a compensation order, part of which awarded "any and all costs" related to a medical expert's examination. *Id.* at *3. Twelve days after the court issued its compensation order, the employee filed a motion for discretionary costs, and the employer filed a response five days later. *Id.* The trial court then issued another order addressing the ambiguity in its prior order and granting the employee's motion for discretionary costs. *Id.* at *4. The employer filed a notice of appeal, which was filed more than thirty days after the court's original compensation order, but less than thirty days after the court's subsequent order resolving the costs issue. *Id.* The employee sought to have the appeal dismissed as untimely. *Id.*

In addressing the timeliness of the appeal, we stated as follows:

> Under these circumstances, and looking to substance over form, we conclude that Employee's motion for discretionary costs and Employer's response in opposition to this motion sought additional findings of fact and conclusions

---

[4] Tenn. Comp. R. and Regs. 0800-02-22-.01(1)(b) mirrors the statutory requirement that a notice of appeal of a compensation order be filed "[w]ithin thirty (30) calendar days of the date a compensation order was filed." However, this rule does not purport to speak to any circumstances that may extend deadlines in the appellate process as provided in the Rules of Civil Procedure. We conclude there is no conflict between this rule and Rules 52.02 or 59.01.

of law pursuant to Rule 52.02 concerning whether [a medical expert's] fees for reviewing medical records and conducting a physical examination of Employee were recoverable costs. Both the parties and the trial court treated the issue as unresolved, and a subsequent hearing was conducted to address the dispute. The trial court then issued another order that included additional findings of fact and conclusions of law not contained in the previous order. Having concluded that Employee's motion was filed in accordance with Rule 52.02, the deadline for filing a notice of appeal was extended until after the issuance of the trial court's order resolving the motion as provided for in Rule 59.01. Thus, Employer's August 9, 2016 notice of appeal was timely.

*Id.* at \*11. Our opinion in *Garassino* was appealed, and the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel affirmed our decision. *Garassino v. Western Express, Inc.*, No. M2016-02431-SC-R3-WC, 2018 Tenn. LEXIS 60 (Tenn. Workers' Comp. Panel Feb. 8, 2018). In addressing the timeliness issue, the Appeals Panel explained:

Whether this appeal was timely depends on the type of motion filed after the entry of the trial court's compensation order. In making that determination, the court will look to the substance rather than form. We agree with the Appeals Board that Rule 52.02 of the Tennessee Rules of Civil Procedure controls in this case. Employee's motion requested the trial court make an additional finding regarding the amount of the discretionary cost award. Tennessee Rule of Civil Procedure 59.01 provides that a motion made pursuant to Rule 52.02 extends the time for initiating an appeal. Accordingly, we affirm the Appeal Board's conclusion that Employer's appeal was timely.

*Id.* at \*6 (internal quotation marks and citation omitted). We conclude a similar analysis is appropriate here. After the trial court issued its compensation order on April 8, Employer filed a motion to amend within thirty days asking the court to make additional findings concerning Employee's entitlement to attorney's fees and how such fees were to be paid. Whether that motion is properly considered to have been filed pursuant to Rule 52.02 or Rule 59.04, both types of motions work to extend the "time for taking steps in the regular appellate process" as stated in Rule 59.01.

Employee argues that *Garassino* is distinguishable from the present case because, in that case, the issue being raised on appeal had been addressed by the court in the order it issued after its compensation order. Thus, once the trial court in *Garassino* issued its subsequent order and the notice of appeal was filed, the appellant only presented issues for review that had been addressed in the court's subsequent order. Employee asserts that, in the present case, Employer is seeking to present issues for review that were addressed in the original compensation order but *not* in the motion to amend or the court's subsequent

8

orders and that it should be precluded from doing so.  We conclude, however, that neither the text of Rule 59.01 nor the cases interpreting that rule limit the issues that can be raised on appeal to only those addressed in post-trial motions and subsequent court orders.  If we were to take Employee's argument to its logical conclusion, in any case where a party considering an appeal elected to file a post-trial motion of the type specified in Rule 59.01, the appellant would be forced to file multiple notices of appeal to preserve all possible issues on appeal.  Nothing in Tennessee's Workers' Compensation Law or applicable rules or regulations supports such an interpretation.  To the contrary, the last sentence of Rule 52.02 expressly *reserves* an appellant's right to raise issues challenging the sufficiency of the evidence supporting the trial court's factual findings regardless of whether that appellant objected to such findings at trial or made a motion to amend such findings post-trial.  Thus, we find Employee's argument to be without merit, and we deny Employee's motion to dismiss the appeal.

*Weighing of Expert Medical Testimony*

For its part, Employer asserts the trial court erred in giving greater weight to Dr. Bernholt's opinions over those expressed by Dr. Goodfred.  In considering conflicting expert medical opinions, a court may consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672 (Tenn. 1991).  In addition, it is well established that, when faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept, and we will not disturb that decision absent an abuse of discretion." *Jimenez v. Xclusive Staffing of Tenn., LLC*, No. 2016-06-2377, 2017 TN Wrk. Comp. App. Bd. LEXIS 45, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2017).  However, we are also charged with reviewing documentary evidence de novo.  *See, e.g.*, *Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *16 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015).  Moreover, when the trial court's determination is challenged on appeal, we must determine where the preponderance of the evidence lies.  *See* Tenn. Code Ann. § 50-6-239(c)(7).  Thus, in considering these various standards of review, we have previously concluded that, in circumstances where a trial court has weighed expert medical opinions contained in depositions, the trial court has discretion to accredit the expert opinion it believes offers the more probable explanation.  We then consider whether the preponderance of the evidence as a whole, including lay testimony and other evidence, leads to the conclusion that the trial court abused its discretion.  *See Moore v. Beacon Transport*, LLC, No. 2018-06-1503, 2021 TN Wrk. Comp. App. Bd. LEXIS 39, at *7 n.1 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021).

Here, we conclude the trial court did not err in accrediting the opinions of Dr. Bernholt over those of Dr. Goodfred.[5]  Although Dr. Goodfred described his extensive experience treating workers' compensation patients, he also acknowledged that he is not board-certified in any specialty and is unfamiliar with the AMA Guides, the text required *by statute* to assess anatomical impairment in virtually every workers' compensation case in Tennessee.  *See* Tenn. Code Ann. § 50-6-204(k)(2)(A) ("The treating physician or chiropractor *shall utilize* the applicable edition of the AMA [G]uides as established by this chapter." (emphasis added)).  Second, the trial court noted that Dr. Goodfred saw Employee a limited number of times during a one-month period, whereas Dr. Bernholt treated and evaluated Employee over a ten-month period.  Finally, the trial court relied on Dr. Bernholt's qualifications as a board-certified orthopedic surgeon and the fact that Dr. Bernholt performed surgery on Employee's knee and found evidence of a "full-thickness chondral defect" during surgery.  Dr. Bernholt also testified as to why that finding may have been missed on the MRI.  In short, we find nothing in this record to indicate the trial court erred in relying on the opinions expressed by Dr. Bernholt.  Hence, we find Employer's argument on this issue to be without merit.

*Independent Intervening Event*

Finally, Employer alleges the trial court erred in "disregarding" evidence of a subsequent event during which Employee's knee was apparently struck accidentally by a hoverboard.  The Tennessee Supreme Court addressed the impact of independent, intervening events in *Anderson v. Westfield Group*, 259 S.W.3d 690 (Tenn. 2008).  In *Anderson*, the employee suffered a compensable work-related fracture to his left elbow.  *Id.* at 693.  After a period of recovery, he was released to return to work.  *Id.*  The parties then settled his claim for workers' compensation benefits and left open his right to reasonable and necessary future medical treatment.  *Id.*  Several months later, the employee, who was experiencing numbness in his left hand after suffering an ulnar nerve injury during surgery to repair his work-related condition, suffered a severe burn injury to his left hand when he placed it on a hot burner of his stove while bending over to retrieve a dropped item.  *Id.* at 694.  The issue on appeal was whether the treatment needed for this subsequent injury was covered by the terms of his workers' compensation settlement agreement.  *Id.* at 694-95.

In explaining Tennessee's "direct and natural consequences rule" and the "independent intervening event" doctrine, the Supreme Court stated, "the progressive worsening or complication of a work-connected injury remains compensable so long as the

---

[5] Contrary to the findings reflected in the trial court's order, we find no evidence in this record that Dr. Goodfred was selected from a panel such that he is entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(12)(E) (2024).  We also find no evidence that Dr. Goodfred is board-certified in any specialty.  We conclude, however, that these errors are harmless under the circumstances of this appeal.

worsening is not shown to have been produced by an intervening nonindustrial cause." *Id.* at 697 (quoting 1 Larson's Workers' Compensation Law § 10 (2004)).

In the present case, we note initially that we disagree with Employer's characterization of the issue. Contrary to Employer's framing of the issue, the trial court did not "disregard" evidence of the hoverboard incident that allegedly occurred several weeks after the work accident in December 2021. In fact, the trial court expressly considered the evidence of the hoverboard incident and noted that Mr. Leavelle testified it was "kind of an insignificant thing." More importantly, the record reflects that when Dr. Goodfred was asked about that incident, of which he was unaware prior to his deposition, he testified only that it was reasonable to believe the incident "*could* exacerbate or aggravate or worsen" Employee's condition. (Emphasis added.) Yet, Dr. Goodfred did not offer an opinion that the incident did, in fact, permanently aggravate, materially advance, or cause an anatomic change to Employee's knee condition. Finally, Dr. Goodfred admitted that Employee reported the same symptoms in his knee both before and after the hoverboard incident. We conclude that, at most, the evidence addressing the subsequent event could reasonably support a finding that Employee's left knee symptoms were temporarily exacerbated by the hoverboard incident. In short, we find no evidence in this record that the hoverboard incident permanently aggravated or materially advanced Employee's work-related injury. Thus, we discern no error by the trial court in addressing this issue.

## Conclusion

For the foregoing reasons, we deny Employee's motion to dismiss the appeal, affirm the trial court's compensation order in all respects, and certify the order as final. Costs on appeal are taxed to Employer.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Marcus Leavelle | Docket No. 2022-08-0109 |
| v. | State File No. 90156-2021 |
| RCT Memphis TN PC, et al. | |
| Appeal from the Court of Workers' Compensation Claims Shaterra R. Marion, Judge | Heard October 23, 2025 via Microsoft Teams |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of November, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Garett P. Franklyn | | | | X | gpfranklyn@mijs.com clbailey@mijs.com |
| Andrew L. Wener | | | | X | awener@wenerlawfirm.com skramer@wenerlawfirm.com |
| Shaterra R. Marion, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov